```
            IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF GEORGIA
                      ATHENS DIVISION
```

|  |  |  |
|---|---|---|
| BOBBY E. WILLIAMSON and WENDY S. WILLIAMSON, | * | |
| Appellants, | * | CASE NO. 3:08-CV-84(CDL) |
| vs. | * | |
| WASHINGTON MUTUAL HOME LOANS, INC., | * | |
| Appellee. | * | |

O R D E R

Appellants appeal the bankruptcy court's finding that Appellee's claim pursuant to a security deed covering Appellants' land and mobile home should not be modified upon the confirmation of Appellants' modified Chapter 13 plan. The bankruptcy court found that Appellee's claim was secured by a security interest in real property consisting of Appellants' principal residence, and therefore, that claim could not be modified under 11 U.S.C. § 1322(b)(2). Appellants maintain that their mobile home should not be considered "real property," and thus it should not be excluded from modification under § 1322(b)(2). The issue on this appeal is whether the bankruptcy court erred in finding that Appellants' mobile home was part of Appellants' real property and covered under the applicable security deed on Appellants' property. For the following reasons, the Court affirms the bankruptcy court.

1

STANDARD OF REVIEW

The district court, in reviewing a decision of a bankruptcy court, functions as an appellate court. *See Williams v. EMC Mortgage Corp. (In re Williams)*, 216 F.3d 1295, 1296 (11th Cir. 2000) (per curiam); *see also Reider v. Fed. Deposit Ins. Corp. (In re Reider)*, 31 F.3d 1102, 1104 (11th Cir. 1994). On an appeal from a bankruptcy court, district courts "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. The Court must accept the bankruptcy court's findings of fact unless those facts are clearly erroneous. *Id.* The Court is not authorized to make independent factual findings. *Equitable Life Assurance Soc'y v. Sublett (In re Sublett)*, 895 F.2d 1381, 1384 (11th Cir. 1990). Legal conclusions by the bankruptcy court, however, are reviewed *de novo*. *See Club Assocs. v. Consol. Capital Realty Investors (In re Club Assocs.)*, 951 F.2d 1223, 1228 (11th Cir. 1992).

BACKGROUND

**I.   The Bankruptcy Court's Factual Findings**

The bankruptcy court made the following factual findings which this Court reviews deferentially to determine whether they are clearly erroneous.

In 1999, Appellants Bobby and Wendy Williamson purchased 11.38 acres of unimproved land in Madison County, Georgia. The Bank of

Danielsville[1] financed the purchase.  (Trial Tr. [hereinafter Tr.] 19:3-10, Apr. 24, 2008.)  On May 3, 1999, Appellants executed a security deed in favor of the Bank of Danielsville, granting the bank a security interest in the 11.38 acres as collateral for the obligation owed.  The amount of indebtedness initially incurred by Appellants was $46,779.10.  During all relevant times, Appellants owned no other real property.  (*Id.* at 40:16-21.)

On January 14, 2000, Appellants purchased a double-wide mobile home, which was also financed by the Bank of Danielsville.  (*See, e.g.*, *id.* at 20:15-16; 20:20-22; 21:9-12.)  Appellants granted the Bank of Danielsville a security interest in the two halves of the mobile home and the bank's security interest was noted on the certificate of title.  (*See* Ex. P-1 to Tr.)  Appellants moved the mobile home onto the 11.38 acres of real property.  Appellants have considered the mobile home and the 11.38 acres to be their principal residence since April 2000.  (Tr. 40:5-13.)  It is undisputed that Appellants have not filed a Certificate of Permanent Location pursuant to O.C.G.A. § 8-2-181(b).[2]  (*Id.* at 29:12-30:4.)

---

[1]Although the Bank of Danielsville is now known as the Century South Bank of Danielsville (Tr. 19:9-11), the Court will refer to the bank as the "Bank of Danielsville" in this Order.

[2]Enacted by the Georgia Legislature in 2003, O.C.G.A. § 8-2-181(b) provides, in pertinent part, that a mobile home shall become real property if:

(1) The home is or is to be permanently affixed on real property and one or more persons with an ownership interest in the home also has an ownership interest in such real property; and

3

Appellants had a number of other loans at the Bank of Danielsville.  Some of those loans were taken out to make improvements to their real property, including the drilling of a well and the installation of a septic tank.  (*Id.* at 42:1-9.)  On May 22, 2000, Appellants obtained another loan from the Bank of Danielsville, which served as a renewal of three of the loans Appellants had with the Bank of Danielsville.  This renewal loan from the Bank of Danielsville was secured by Appellants' mobile home and an automobile and pickup truck owned by Appellant Bobby Williamson ("Bobby").

Appellants subsequently consolidated their loans into a single loan with a loan from Taylor, Bean, & Whitaker Mortgage Corporation ("Taylor Bean").  A portion of the proceeds of the loan were used to satisfy the loan secured by the 11.38 acres originally made by the Bank of Danielsville.  This loan, which was in the principal amount of $104,000.00, was secured by a security deed executed by Bobby in favor of Taylor Bean on April 27, 2000.[3]  (*Id.* at 5:17-18; *see* Ex. D-1 to Tr. [hereinafter Security Deed].)  This security deed granted Taylor Bean a security interest in Appellants' 11.38 acres of real property.  The security deed provided, in pertinent part, that Taylor

---

(2) The owner of the home and the holders of all security interests therein execute and file a Certificate of Permanent Location:

(A) In the real estate records of the county where the real property is located; and
(B) With the commissioner.

[3]The Court notes that Appellant Wendy Williamson ("Wendy") was not a signatory to the security deed given by Taylor Bean.

4

Bean was to have and to hold the 11.38 acres "together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property." (Security Deed 2.)  Taylor Bean assigned the loan and its related security deed to Appellee Washington Mutual Home Loan, Inc. A premium for insurance coverage on the mobile home was initially included in Appellants' monthly payment on the obligation to Appellee.  (Tr. 61:3-12.)

At the time Taylor Bean made the loan, Appellants' mobile home had been set up on the 11.38 acres and Appellants had no intention of moving the mobile home from the land.  (*Id.* at 38:10-19.)  The wheels and axles attached to the halves of the mobile home were removed when  Appellants moved the mobile home onto the property. (*Id.* at 41:8-9.)  Furthermore, the tongues were removed.  (*Id.* at 27:6-7.)  Appellants built a septic system and a water well, and shortly after Taylor Bean made the loan, Appellants constructed a mortared cinderblock foundation around all four sides of their home. (*Id.* at 37:7-38:9.) Appellants also installed external air conditioning units (*id.* at 42:8-9), along with electrical service, *(id.* at 49:23-25).

**II.  Bankruptcy Proceedings**

On June 7, 2001, Appellants filed for Chapter 13 bankruptcy relief.  (Tr. 5:23-25.)  At the time of the filing, Bobby was obligated to Appellee for a loan secured by Appellants' 11.38 acres

5

and improvements, and Appellants were jointly obligated to the Bank of Danielsville for a loan secured by Appellants' mobile home and an automobile and pickup truck owned by Bobby.  On August 9, 2001, Appellee filed its secured proof of claim with the bankruptcy court in the amount of $104,677.61, representing the principal and pre-petition arrearage owed by Appellants.

Appellants served and filed their first proposed Chapter 13 plan, which offered to cure the arrearage owed on their obligation by making payments through their Chapter 13 plan.  Regular post-petition, monthly payments on the obligation were to be made to Appellee directly.  (*Id.* at 6:1-5.) Appellants continued for several months following their filing to make their regular, post-petition, monthly payments directly to Appellee.  Appellants' first proposed plan provided, in pertinent that, that "[c]onfirmation of this plan will extinguish the second lien on [Appellants'] residence held by [the Bank of Danielsville] due to the lack of value to support the claimed lien."  (Chapter 13 Plan, June 13, 2001.)  Appellee did not object to Appellants' first proposed plan.

On December 24, 2001, Appellants gave notice of the proposed modification of their Chapter 13 plan prior to confirmation.  (*See* Ex. P-3 to Tr., Notice of Mot. for Modification of Plan Prior to Confirmation.)  In the proposed modified plan, Appellants sought to bifurcate Appellee's claim between the secured and unsecured portion.  (*See* Ex. P-7 to Tr., Chapter 13 Plan, Dec. 21, 2001 [hereinafter

Modified Chapter 13 Plan].)  Under the Modified Chapter 13 Plan, Appellants were to pay Appellee its secured amount.  The unsecured portion of Appellee's claim was to be paid pro rata with the rest of Appellants' unsecured creditors.  Appellants' Modified Chapter 13 Plan provided for the full payment of the obligation owed by Appellants to the Bank of Danielsville and secured by their mobile home, and the automobile and the pickup truck owned by Bobby. Appellants' Modified Chapter 13 Plan did not provide that Appellee's security deed was to be satisfied or extinguished upon the completion of plan payments.  (*Id.*)  Appellee did not object to Appellants' Modified Chapter 13 Plan.

On March 6, 2002, the bankruptcy court entered an order confirming Appellants' Modified Chapter 13 Plan.  (Ex. P-6 to Tr., Order Confirming Plan.)  Payments under the Chapter 13 plan were completed by Appellants in 2005.  (Tr. 7:1-2.)  On March 29, 2005, the Bank of Danielsville released its security interest in Appellants' mobile home and the other collateral securing its debt. On June 28, 2005, the bankruptcy court entered an order granting Appellants' Chapter 13 discharge.  A final decree was also entered, closing Appellants' Chapter 13 case.  Following receipt of their discharge, Appellants made several requests of Appellee that it mark its security deed on Appellants' real property satisfied.  However, Appellee refused.  (*Id.* at 7:3-8.)  Appellants' Chapter 13 case was reopened by order of the bankruptcy court on March 1,2007.  On July

7

24, 2007, Appellants filed an adversary proceeding in the bankruptcy court. (*Id.* at 7:8.)

On May 30, 2008, the bankruptcy court entered its order finding that Appellee's security deed was not extinguished by the confirmation of Appellants' Modified Chapter 13 Plan because the secured claim asserted in bankruptcy was protected from modification pursuant to 11 U.S.C. § 1322(b)(2). In determining whether § 1322(b)(2) protected Appellee's rights, the bankruptcy court found that Appellee's security interest reached Appellants' mobile home because it was permanently attached to Appellants' real property, therefore becoming a part of the real property. Appellants appeal that order.

## DISCUSSION

The Court affirms the bankruptcy court because its factual findings are not clearly erroneous and its legal conclusions are *de novo* correct. Section 1322(b)(2) provides, in pertinent part, that a modified plan may "modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence,*" (emphasis added). Section "1322(b)(2) specially prohibits any modification of a homestead mortgagee's rights in the Chapter 13 plan. Because of the protection afforded to mortgagees by § 1322(b)(2), the protected security interest is not compromised even if the interest is undersecured by the value of the property." *Universal Am. Mortgage*

*Co. v. Bateman (In re Bateman)*, 331 F.3d 821, 826 (11th Cir. 2003). Therefore, if Appellants' claim was secured by a security interest in real property consisting of Appellees' principal residence, that claim cannot be modified and the security deed cannot be extinguished.

In order to avoid modification, the following requirements must be met: (1) the creditor must be a holder of a secured claim; (2) the creditor's claim must be secured only by an interest in real property; and (3) that real property must be the debtor's principal residence.  *See* 11 U.S.C. § 1322(b)(2).  It is undisputed that Appellee holds a security deed covering the real property upon which Appellants' mobile home rests. (*See, e.g.*, Tr. 5:14-22.) It is also undisputed that Appellants' mobile home has served as Appellants' principal residence since April 2000.  (*See, e.g.*, *id.* at 40:8-21.) The disputed issue here is whether the bankruptcy court clearly erred in determining that Appellants' mobile home became a permanent attachment to Appellants' real property and thus should be considered part of the real property for purposes of § 1322(b)(2).[4]

---

[4]The date for determining whether Appellee's claim is secured by Appellants' principal residence, and thus protected by § 1322(b)(2) , is the date that Taylor Bean made the loan, which was April 27, 2000.  (Tr. 5:17-18; s*ee U.S. Dep't of Agric. v. Jackson*, No. 5:05-CV-20(CAR), 2005 WL 1563529, at *4 (M.D. Ga. July 1, 2005) ("Using the date of the loan in examining § 1322(b)(2) is consistent with, and wholly supportive of Congress' flow of capital purpose.") (internal quotation marks omitted).)
   Furthermore, in determining whether Appellants' mobile home is real or personal property, the Court must look to applicable state law, which in this case is Georgia law.  *See Butner v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law."); *see also Kennedy v. Lane Foods, Inc. (In re Kennedy)*, 192 B.R. 282, 287

In *Walker v. Washington (In re Washington)*, 837 F.2d 455, 456-67 (11th Cir. 1988) (per curiam), the Eleventh Circuit noted that Georgia courts consider three factors in determining whether an object is personalty or realty. The first factor is the degree to which the object has become integrated with the land. "Under Georgia law, if an article cannot be removed from the land without suffering essential injury, it is considered a fixture." *Id.* at 456 (internal quotation marks omitted). The second factor is the intention of the parties. *Id.* at 456-57; *see Goger v. United States (In re Janmar, Inc.)*, 4 B.R. 4, 9 (N.D. Ga. 1979) ("The determination of whether or not an object has become a fixture is generally governed by the intent of the parties and is based upon a variety of factors."). Finally, the third factor is whether unity of title exists between the personalty and the realty at the time the personalty allegedly became a part of the realty.

> When the ownership of the land is in one person and the thing affixed to it is in another, and in its nature it is capable of severance without injury to the former, the fixture can not, in contemplation of law, become a part of the land, but must necessarily remain distinct property to be used and dealt with as personal estate.

*In re Washington*, 837 F.2d at 457 (internal quotation marks omitted). The bankruptcy court, applying the three foregoing factors to this case, found that Appellants' mobile home was sufficiently affixed to

---

(M.D. Ga. 1996).

10

the underlying real property to be considered part of the real property for purposes of § 1322(b)(2).[5]

## I. The Degree to Which Appellants' Mobile Home was Integrated with or Attached to the Realty

In this case, not only had the mobile home's tongue, wheels, and axles been removed, but a mortared cinderblock foundation was built around the mobile home. Furthermore, external air conditioning units were installed, along with a septic system, a drilled well for water, and electrical service. These facts clearly support the finding that Appellants' mobile home was integrated with the underlying realty. *Cf. Homac Inc. v. Fort Wayne Mortgage Co.*, 577 F. Supp. 1065, 1070 (N.D. Ga. 1983) (finding that mobile home was not a fixture because it was still mounted on blocks, with tongue, axles, and tires still in place and with no permanent foundation around it).

The Court finds Appellants' contention that it would be physically "possible" to move the home from the property and thus the mobile home should not be considered part of the realty unpersuasive. Not only does the mobile home have a foundation, but the means for transporting the home have been removed. Even if the home could be removed from the property, it is clear that the physical possibility

---

[5]Appellants contend that O.C.G.A. § 8-2-181, which was enacted by the Georgia Legislature in 2003, overrules *In re Washington*. It is undisputed that Appellants did not file a Certificate of Permanent Location in this case. (*See* Tr. 29:12-30:4.) However, O.C.G.A. § 8-2-181 became effective on May 31, 2003, whereas Taylor Bean made the loan in April 2000. Because the date of the loan is the critical date in determining whether Appellee's claim is protected by § 1322(b)(2), *see Jackson*, 2005 WL 1563529, at *4, the Court finds that O.C.G.A. § 8-2-181 is not applicable in this case.

11

of removing the home from the property is not dispositive of whether a mobile home is personalty or realty. *See In re Janmar, Inc.*, 4 B.R. at 9 ("[I]t is clear that the difficulty or ease of the removal of property from the premises is not determinative of its status as a fixture vel non.").[6]  Therefore, the Court finds that the bankruptcy court did not clearly err in finding that the mobile home was integrated with the underlying realty

**II.  The Intention of the Parties**

"It is the *intent* of the parties vested with ownership and the use of the chattel to be annexed as to whether the chattel is to become a permanent part of the realty which is the *primary* test in determining whether or not it becomes a fixture." *Manderson & Assocs., Inc.*, 193 Ga. App. at 734, 389 S.E.2d at 260 (internal quotation marks omitted).  The bankruptcy court found that with their

---

[6]Appellants contend that a mobile home is designed and built to move and therefore, by definition, cannot become a part of the underlying realty. (*See* Br. of Appellants 14; *see also* Appellants' Reply Br. 2.) Similarly, Appellants contend that mobile homes should be considered personalty because they are quite analogous to billboards, which have been considered personalty by several Georgia courts. *See Manderson & Assocs., Inc. v. Gore*, 193 Ga. App. 723, 732-34, 389 S.E.2d 251, 259-61 (1989) (finding that billboards were personalty because they could be easily moved with proper equipment).  Specifically, Appellants contend that if billboards, "which are cemented into the ground and [are] very difficult to move . . . are not considered . . . affixed to the real property upon which they sit[,]" then surely mobile homes should not be considered realty. (Appellants' Reply Br. 4; *see* Br. of Appellants 17.)  However, the Eleventh Circuit has clearly held that mobile homes can become a part of the underlying realty despite the fact that they are movable. *See In re Washington*, 837 F.2d at 457 (affirming district court's finding that mobile home became a part of the underlying realty based on evidence that debtors made substantial improvements to the mobile home, including building a substantial foundation).

12

initial payments on Appellee's loan, Appellants included payment for the insurance premiums on the mobile home.  This evidence supports the bankruptcy court's conclusion that the parties intended the mobile home to be part of the real property covered by Appellee's security deed.[7]  (Tr. 61:3-12.)  Furthermore, at the time Appellants borrowed money from Taylor Bean, they had no intention of moving their mobile home away from their realty.  (*See, e.g.*, *id.* at 38:10-19.)  In addition, Appellants' original Chapter 13 plan provided that confirmation would extinguish the second lien on their residence which was held by the Bank of Danielsville, thereby showing that Appellant understood that Appellee had a first priority mortgage on Appellants' mobile home.  Thus, the Court finds that the bankruptcy court did not clearly err in finding that the parties in this case intended the mobile home to be a part of the realty.[8]

---

[7]Appellants contend that they were "essentially duped by the bank employees who set up th[e] new loan for them with Taylor Bean," and therefore, "the fact that they paid homeowners insurance to Taylor Bean . . . has no bearing at all on whether or not they intended the mobile home to be affixed to the real property."  (Appellants' Reply Br. 3.) Appellants have failed to point the Court to any evidence in the record to suggest that they were "duped" by Taylor Bean, and the Court is hard-pressed to find any.  In fact, the record suggests that Appellee merely "offered the [homeowner] insurance in with the payment[,]" and Appellants accepted the offer.  (*See* Tr. 61:3-15.)

[8]During the trial, photographs of the mobile home taken in 2007 were entered as exhibits.  (*See* Exs. D-2 to -8 to Tr.; *see also* Tr. 8:22-9:17.) The bankruptcy court referred to the pictures when making its finding that the parties intended the mobile home to be a part of the realty.  (Bankr. Ct. Order 15, May 30, 2008.)  Appellants contend that the bankruptcy court's examination of these photographs was inappropriate. Specifically, Appellants contend that because the pertinent date in determining whether Appellants' mobile home became affixed to the realty was April 27, 2000, these photographs, taken in 2007, were highly irrelevant.  (*See* Br. of Appellants 9-10, 18-19; *see also* Appellants' Reply Br. 4-5.)  Regardless

**III. Unity of Title between Mobile Home and Realty**

Finally, the bankruptcy court found that there was a unity of title between the ownership of the land and the mobile home. Appellants purchased the mobile home in January 2000. In April 2000, Taylor Bean made the loan to Bobby in which he executed a security deed pledging the realty as security for his obligation.[9] Thus, Bobby had an ownership interest in both the realty and the mobile home at the time the mobile home became a part of the underlying realty. Accordingly, the Court finds that the bankruptcy court did not clearly err in finding that there was unity of title between the mobile home and the underlying realty at the time the personalty allegedly became a part of the realty.

Based on the foregoing, the Court finds that the bankruptcy court did not err in concluding that Appellants' mobile home was part of the real property for purposes of § 1322(b)(2). Accordingly, Appellee's secured claim could not be modified or extinguished without its consent.[10]

---

of whether the bankruptcy court's reliance on the photographs may have been misplaced, the Court finds that there is ample evidence in the record to support the bankruptcy court's finding that the parties intended the mobile home to be a part of the realty.

[9]As discussed above, Wendy was not a signatory to the security deed given by Taylor Bean.

[10]The Court also rejects Appellants' contention that Appellee's security interest was somehow invalid. It is undisputed that Appellee had a properly recorded security deed covering the real property in question, and as explained, the bankruptcy court did not err in concluding that the mobile home was sufficiently attached to that real property that it is considered to be covered by the security interest in question for purposes of modification.

CONCLUSION

The bankruptcy court did not err in finding that Appellants' mobile home was a fixture upon the realty so as to become a part of the underlying realty for purposes of § 1322(b)(2). Thus, Appellee's claim could not be modified or extinguished by Appellants' bankruptcy. *See Scott v. Scott (In re Scott)*, 295 B.R. 686, 688 (M.D. Ga. 2003) (finding that creditor's secured claim survived debtors' confirmed plan and debtors' discharge). Accordingly, the Court affirms the bankruptcy court's order.

IT IS SO ORDERED, this 4th day of February, 2009.

    S/Clay D. Land
    CLAY D. LAND
UNITED STATES DISTRICT JUDGE